## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **KAMANA KEOHOHOU And NICHOLAS EVANS, individually and on behalf of all other similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NORTH AMERICAN DERIVATIVES EXCHANGE, INC. D/B/A CRYPTO.COM, FORIS DAX, INC., and DOES 1-20,**<br><br>**Defendants.** | **Case No. 1:26-cv-20996**<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

1.     Plaintiffs Kamana Keohohou and Nicholas Evans make the following allegations on behalf of themselves, and all others similarly situated, based on their personal knowledge as to the facts pertaining to Plaintiffs, and based on the investigation of counsel and information and belief as to all other allegations.

## I.     INTRODUCTION

2.     What consumers recognize as "Crypto.com" is a brand of interrelated corporate entities.

3.     In 2021, Crypto.com entered into a sale and purchase agreement to acquire Defendant North American Derivatives Exchange.

4.     In December 2024, Defendant North American Derivatives Exchange d/b/a Crypto.com ("Nadex" or "Crypto.com") launched its "Sports Event Trading" service and allowed its users to place bets by making "trade predictions" on the outcome of sporting events.

5.     Crypto.com made various announcements regarding the launch, including on X (formerly Twitter).[1] In its X posting, Crypto.com represented that users could "[t]urn correct predictions into profit with Sports Event Trading, now available across the US," that its product

---

[1] *See* https://x.com/cryptocom/status/1871182271069528362 (last visited Feb. 12, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

was a "CFTC-regulated derivatives product," and displayed within an embedded video a map of the Crypto.com logo displayed in every contiguous U.S. state.[2]



6.     While Crypto.com represents that these "events contracts" are CFTC-regulated derivatives products, and thus something other than illegal sports gambling, they are in fact nothing more than illegal sports gambling by another name.

7.     And in fact, Crypto.com agrees its services are betting. In an article specifically designed for beginners to help them understand "contract trading," Crypto.com states under the definition of "contract" that "[w]hen you buy a contract on Predict, **you're essentially placing a bet on your prediction about the occurrence, non-occurrence, or extent of the occurrence of a specific event...**"[3] (emphasis added).

---

[2] *Id.*

[3] Charles Archer, *Event contract trading glossary for beginners*, Crypto.com, https://crypto.com/us/prediction/learn/event-contract-trading-glossary-for-beginners (last visited Feb. 12, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

8.      Crypto.com's sports event trading service violates the specific laws of over two dozen states that prohibit offering sports gambling services or regulate their offering, including Plaintiffs' home state of California as well as Florida where Crypto.com is based.

9.      As detailed throughout this complaint, Crypto.com falsely represents to its users that its services are legal and generally leaves reasonable consumers with the impression they are using a legal and regulated service. Based on Crypto.com's representations, Plaintiffs Kamana Keohohou, Nicholas Evans, and the Classes specifically bargained for entry into legal sports gambling contests. But all they received from Crypto.com was entry into illegal sports gambling contests. Plaintiffs and the Classes did not receive the benefit of the bargain, as the illegal entries had substantially less (in fact zero) value than entry into legal contests. Moreover, if Crypto.com had accurately disclosed the unlawful nature of the gambling services, Plaintiffs and the Classes would not have purchased Crypto.com's sports gambling services at all.

10.     Accordingly, Plaintiffs bring this action against Crypto.com—one of the largest sports betting operators in the country—and Foris DAX, Inc., seeking to recover the hundreds of millions of dollars that Defendants has unlawfully taken from them and the Classes.

## II.    <u>PARTIES</u>

### A.    **Plaintiffs.**

11.     At all times relevant to this action, Plaintiff Kamana Keohohou was over the age of 18 and was a resident of Palm Springs, California and a citizen of California.

12.     At all times relevant to this action, Plaintiff Nicholas Evans was over the age of 18 and was a resident of Benicia, California and a citizen of California.

### B.    **Defendants.**

13.     Defendant North American Derivatives Exchange, Inc., doing business as Crypto.com | Derivatives North America (CDNA), is a Delaware incorporated derivatives exchange with its principal place of business in Chicago, Illinois.

14.     Defendant Foris DAX, Inc. provides the Crypto.com application and web services and is a Delaware corporation with its registered offices in Tyler, Texas.

15.     Does 1-20 are individuals and/or entities who facilitate Defendants unlawful practices described in this Complaint. The identities of Does 1-20 are not presently known to Plaintiffs. The Doe defendants, and the Crypto.com entities, are collectively referred to in this Complaint as "Defendants." Plaintiffs expressly reserve the right to amend this Complaint to add the Doe defendants by name, once their identities are known.

16.     Each Defendant is a "person" and/or engages in "business" and has transacted business within this District by offering, marketing, facilitating, and profiting from illegal gambling services to consumers residing in and/or accessing the platforms within this state and across the country.

### III.     JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there exists minimal diversity between Plaintiffs, class members, and Defendants and because the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

18.     This Court has personal jurisdiction over the parties in this matter because Defendants regularly conduct business within this District, including by engaging in the unlawful gambling practices that are at the center of this action.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c) because Defendants' unlawful actions, which are the subject of this action, occurred in this District.

### IV.     LEGAL BACKGROUND

**A.     Sports Betting is Governed by State Law.**

20.     Sports gambling is one of the most highly regulated industries in the United States. Until the Professional and Amateur Sports Protection Act ("PASPA," 28 U.S.C. §§ 3701 *et seq.*) was overturned in 2018, it was illegal in most of the United States. *See Murphy v. Nat'l Collegiate Athletic Ass'n¸* 584 U.S. 453 (2018).

21.     Since the Supreme Court confirmed in *Murphy* that states, not the federal government, may regulate sports betting, a plethora of states and territories have enacted legislative

and regulatory schemes that permit licensed sports betting within their borders—but prohibit operations that violate state regulations and operations by entities that fail to register with the state.

22.     Additionally, many states—while authorizing sports betting and other gambling—continue to allow participants in those gambling contests to seek recovery of their gambling losses.

23.     The various state and jurisdictional laws that allow such recovery are traced from a 1710 British law passed during the reign of Queen Anne ("the Statute of Anne"), which allows a losing party to sue the winning party for the value of losses. Certain jurisdictions also allow private or third parties to initiate the lawsuit and recover against the winning party for treble damages as a financial incentive to induce the public to investigate and pursue claims against gamblers.

**B.      Florida, as well as Plaintiffs' State of Residence, California, Prohibit or Strictly Regulate Sports Gambling.**

**1.      Florida, Where Cypto.com Contends the Law Applies, Prohibits Unlawful Sports Gambling Contracts.[4]**

24.     Florida declares gambling contracts void, unless expressly authorized by Florida law.  Fla. Stat. Ann. § 849.26 provides:

> All promises, agreements, notes, bills, bonds or other contracts, mortgages or other securities, when the whole or part of the consideration is for money or other valuable thing won or lost, laid, staked, betted or wagered in any gambling transaction whatsoever, regardless of its name or nature, whether heretofore prohibited or not, or for the repayment of money lent or advanced at the time of a gambling transaction for the purpose of being laid, betted, staked or wagered, **are void and of no effect**; provided, that this act shall not apply to wagering on pari-mutuels or any gambling transaction expressly authorized by law. (emphasis added)

25.     Chapter 849 of the Florida Statutes allows some forms of gambling, such as gaming activities authorized by the gaming compact between the Seminole Tribe and State of Florida (Fla. Stat. Ann. § 285.710); amusement games undertaken in compliance with Chapter 546 of the

---

[4] Crypto.com's terms of service provide "Any dispute arising from these Terms, an Annex, or your use of the Services . . . will be governed by and construed and enforced in accordance with the laws of the State of Florida. . . Any dispute between the parties . . . will be resolved in state or federal courts sitting in Miami-Dade County, Florida." *See* Section 19.8, Governing Law & Venue, https://crypto.com/document/entity_us.pdf (last visited Feb. 12, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Florida statutes, governing fairs and the like; pari-mutuel wagering conducted pursuant to Chapter 550 of the Florida statutes; slot machine gaming conducted pursuant to Chapter 551 of the Florida statutes; games conducted under Fla. Stat. Ann. § 849.086 pertaining to card rooms; and bingo games conducted pursuant to Fla. Stat. Ann. § 849.0931. *See* Fla. Stat. Ann. § 849.142.

26.     Unlike these expressly authorized forms of gambling, Crypto.com's sports gambling services are not expressly authorized under Florida law, and as such, are illegal under Florida law.

27.     This is true whether a Crypto.com user is using Crypto.com within the state of Florida or is accessing the services outside the state of Florida. In interpreting Florida Statute Section 849.26, Florida courts have consistently held that gambling obligations, even if valid in the state in which they were undertaken, are unenforceable in Florida as contrary to law and public policy.[5]

28.     Under Florida Statute § 849.08, "[w]hoever plays or engages in any games at cards, keno roulette, faro or other game of chance, at any place, by any device whatsoever, for money or other thing of value, shall be guilty of a misdemeanor of the second degree. . ."

29.     Further, under Florida Statute Section 849.14, "[w]hoever stakes, bets, or wagers any money or other thing of value upon the result of any trial or contest of skill, speed or power or endurance of human or beast, or whoever receives in any manner whatsoever any money or other thing of value staked, bet, or wagered, or offered for the purpose of being staked, bet, or wagered, by or for any other person upon any such result, or whoever knowingly becomes the custodian or depositary of any money or other thing of value so staked, bet, or wagered upon any such result, or whoever aids, or assists, or abets, or influences in any manner in any of such acts all of which are hereby forbidden, commits a felony of the third degree."

---

[5] *Froug v. Carnival Leisure Industries, Ltd.,* 627 So.2d 538, 539 (Fla. 3rd Dist.Ct.App.1994); *see also Barquin v. Flores,* 459 So.2d 436 (Fla. 3rd Dist.Ct.App.1984); *see also Carp v. Florida Real Estate Commission,* 211 So.2d 240 (Fla. 3rd Dist.Ct.App.1968); *see also Dorado Beach Hotel Corporation v. Jernigan,* 202 So.2d 830 (Fla. 1st Dist.Ct.App.1967); *see also Young v. Sands,* 122 So.2d 618 (Fla. 3rd Dist.Ct.App.1960).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

30.     And "taking or receiving, while engaged in the business or profession of gambling, any bet or wager upon the result of any trial or contest of skill, speed, power, or endurance of human, beast, fowl, motor vehicle, or mechanical apparatus or upon the result of chance, casualty, unknown, or contingent event whatsoever" is considered "bookmaking" under Florida law and is a felony in the third degree. Fla. Stat. Ann. §§ 849.25(1)(a), (2).

31.     Florida State Section 501.204 broadly prohibits unfair and deceptive acts in trade or commerce. Fla. Stat. Ann. §501.204.

**2.     California, Where Plaintiffs Reside, Continues to Ban All Forms of Sports Betting.**

32.     California continues to ban gambling in most forms, with some limited exceptions for tribal gambling, horse racing, and cardrooms. California currently prohibits sports gambling.

**a.     California's Longstanding Ban on Gambling.**

33.     For over 150 years, California has broadly prohibited commercialized gambling.

34.     For example, in 1872, California enacted Penal Code Section 330, which provides in relevant part that "[e]very person who . . . conducts, either as owner or employee . . . *any banking or percentage game* played with . . . *any device*, for money, checks, credit, or other representative of value . . . is guilty of a misdemeanor[.]" CAL. PENAL CODE § 330 (emphasis added).

35.     A "banking game" refers to a situation where the "house" is a participant in the game, taking on all contestants, paying all winners, and collecting from all losers. *See Sullivan v. Fox,* 189 Cal. App. 3d 673, 678 (1987). And a "percentage game" refers to a situation where the house collects a portion of the bets or wagers made by contestants, but is not directly involved in game play. *See id. at* 679.

36.     Similarly, California Penal Code Section 337a prohibits additional conduct, including:

- "*Pool selling* or *bookmaking*, with or without writing, at *any time or place*." CAL. PENAL CODE § 337a(a)(1) (emphasis added).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

- *"[R]eceiv[ing], hold[ing], or forward[ing]* . . . in *any manner whatsoever*, any *money* . . . *staked, pledged, bet or wagered*, or to be staked, pledged, bet or wagered, or offered for the purpose of being staked, pledged, bet or wagered, *upon the result*, or purported result, *of any* trial, or purported trial, or *contest*, or purported contest, of skill, speed or power of endurance of *person* or animal, or between *persons*, animals, or *mechanical apparatus*, or *upon the result, or purported result, of any* lot, chance, casualty, *unknown or contingent event whatsoever.*" *Id.* at (a)(3) (emphasis added).

- "[A]t *any time or place, record[ing], or register[ing] any bet* or bets, *wager* or wagers, *upon the result*, or purported result, *of any* trial, or purported trial, or *contest*, or purported contest, of *skill*, speed or power of endurance *of person* or animal, or *between persons*, animals, or *mechanical apparatus*, or upon the result, or purported result, *of any* lot, chance, casualty, *unknown or contingent event whatsoever.*" *Id.* at (a)(4) (emphasis added).

- "*[O]ffer[ing] or accept[ing] any bet* or bets, or *wager* or wagers, *upon the result*, or purported result, *of any* trial, or purported trial, or *contest*, or purported contest, of skill, speed or power of endurance *of person* or animal, or *between persons*, animals, or *mechanical apparatus.*" *Id.* at (a)(6) (emphasis added).

37. The terms used in Section 337a have their commonsense meanings. For example, the California Court of Appeal has explained that "'[p]ool selling' is the selling or distribution of shares or chances in a wagering pool," such as when money wagered by all participants is combined into a single pool and the winnings are distributed based on predetermined rules. *See Finster v. Keller,* 18 Cal. App. 3d 836, 846 (1971) (cleaned up). And "'[b]ookmaking' is the making of a betting book and includes the taking of bets, [and] [t]he taking of one bet is sufficient" to constitute "bookmaking." *People v. Thompson*, 206 Cal. App. 2d 734, 739 (1962) (cleaned up).

38. Similarly, "bet" and "wager" have their commonsense meanings. For example, the Judicial Council of California Criminal Jury Instructions (2025 Edition) provides that a "bet is a

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

wager or agreement between two or more people that if an uncertain future event happens, the loser will pay money to the winner or give the winner something of value. A bet includes a wager made on the outcome of any actual or purported event, including but not limited to any kind of sporting contest." CALCRIM No. 2993, Receiving or Holding Bets (CAL. PENAL CODE § 337a(a)(3)) (cleaned up).[6]

39. "Bets" and "wagers" include entry fees paid in online fantasy sports. *Los Angeles Turf Club v. Horse Racing Labs, LLC,* 2017 WL 11634526, at *8 (C.D. Cal. May 15, 2017).

40. Put simply, a company violates California Penal Code Section 337a when it engages in pool selling, bookmaking, or accepts or records any bets or wagers on the result of any contest and/or any unknown or contingent event whatsoever—including, without limitation, bets associated with the performance of persons.[7]

41. Moreover, various sections of the California Penal Code prohibit "lotteries" and "games of chance."

42. For example, Penal Code Sections 320 and 321 make the operation of a lottery unlawful: "Every person who contrives, prepares, sets up, proposes, or draws any lottery, is guilty of a misdemeanor"[8] and "[e]very person who sells, gives, or in any manner whatever, furnishes or transfers to or for any other person any ticket, chance, share, or interest, or any paper, certificate, or instrument purporting or understood to be or to represent any ticket, chance, share, or interest in, or depending upon the event of any lottery, is guilty of a misdemeanor."[9] Penal Code Section 319 defines a lottery broadly to include "any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the

---

[6] Available online at https://www.justia.com/criminal/docs/calcrim/2900/2993/ (last visited Feb. 12, 2026).

[7] While Section 337a violations are reduced to infractions in certain circumstances for non-commercial gambling in amounts below $2,500, the Section 337a reductions expressly do "not apply to . . . [a]ny bet, bets, wager, wagers, or betting pool or pools made online." CAL. PENAL CODE § 336.9(b)(1).

[8] CAL. PENAL CODE § 320.

[9] CAL. PENAL CODE § 321.

chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known." CAL. PENAL CODE § 319.

43.     Similarly, Penal Code Section 330a makes it unlawful to own or operate any "contrivance, appliance, or mechanical device, upon the result of action of which money or other valuable thing is staked or hazarded . . . [that] is won or lost . . . dependent upon hazard or chance." CAL. PENAL CODE § 330a.

44.     And Penal Code Section 337j makes it unlawful to operate a "game of chance" or to "receive, directly or indirectly, any compensation" for operating such a game "*without having first procured . . . all federal, state, and local licenses required by law*."  CAL. PENAL CODE § 337j. (emphasis added).

45.      In fact, as the California legislature re-affirmed in 2008, "no person in this state has a right to operate a gambling enterprise except as may be expressly permitted by the laws of this state." Cal. Bus. & Prof. Code § 19801(d).

> **b.    Supermajorities of the California Electorate Rejected the Gambling Industry's Attempts to Legalize Sports Betting in 2022.**

46.     In 2022, two ballot initiatives were put to the California voters to legalize certain additional forms of gambling in the state, including various forms of sports betting: Proposition 26 and Proposition 27.

47.     Proposition 26 was primarily sponsored by California's Native American tribes, and, among other things, would have:

- Legalized in-person sports betting at tribal casinos.
- Allowed additional gambling at tribal casinos, including roulette and dice games like craps.
- Established certain taxes and fees associated with sports betting.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

48.     Proposition 26, however, was soundly rejected in November 2022, with approximately 67% of the California electorate voting "no."

49.     Proposition 27 aimed to legalize online sports betting in California, and was primarily sponsored by the online sports betting industry, with the Washington Post reporting that "the industry ultimately spent $150 million on political ads"[10] in an attempt to legalize online gambling in California.

50.     Among other things, Proposition 27 would have:

- Legalized and regulated online sports betting in California.
- Established a new division within the California Department of Justice to set license requirements and oversee the industry.
- Imposed a 10% tax on sports betting revenue and established licensing fees.
- Allocated revenue from online gambling to homelessness prevention.

51.     Proposition 27 was also soundly rejected in November 2022, with 82% of the electorate voting "no," making it one of the largest margins of defeat in California ballot proposition history.

### c.     In July 2025 the California Attorney General Confirmed that Sports Betting Violates California Law

52.     Despite the resounding defeats at the ballot box, online sports betting operators, like Crypto.com, have continued to operate in California.

53.     In response to these massive ongoing daily fantasy sports and sports gambling operations in California, on or about October 5, 2023, State Senator Scott Wilk wrote to the California Department of Justice and requested an investigation into daily fantasy sports betting.

> I write to request a legal opinion as to whether California law prohibits the offering and operation of daily fantasy sports betting platforms with players physically located within the State of California, regardless of whether the operators and associated technology are located within or outside of the State.

---

[10] Gus Garcia-Roberts, *Inside the $400 million fight to control California sports betting,* WASH. POST (Nov. 3, 2022), https://www.washingtonpost.com/sports/2022/11/03/prop-26-27-california-sports-betting/ (last visited Feb. 13, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

> Pursuant to California law, no one may operate "any game of chance" without the required federal, state, and local licenses. No one has "the right to operate a gambling enterprise except as may be expressly permitted by the laws of this state and by the ordinances of local governmental bodies."
>
> In 2022, California voters overwhelmingly rejected Proposition 27 to legalize online sports wagering. Although sports wagering in all forms remains illegal in California, online daily fantasy sports betting is proliferating throughout the state. Through these online platforms, a participant pays to enter a contest in which they may win a prize depending on how well athletes perform. Although the participant may utilize their knowledge of a particular sport in choosing their "team" of players, how well those players perform during a game is completely out of the participant's control. As such, *daily fantasy sports appears to be a game of chance not otherwise permitted by the laws of California.*

(Cleaned up; footnotes omitted; emphasis added).[11]

54.     Consistent with the Senator's request, the California Department directed the Attorney General's Opinion Unit to address the following question:

> Does California law prohibit the offering and operation of daily fantasy sports betting platforms with players physically located within the State of California, regardless of whether the operators and associated technology are located within or outside of the State?

Opinion Request No. 23-1001.[12]

55.     On July 3, 2025, the California Attorney General released its opinion addressing Senator Wilk's request, which confirms the central theory of Plaintiffs' case: **"California law prohibits the operation of daily fantasy sports games…Such games constitute wagering on sports in violation of Penal Code section 337a."** (Emphasis added.)[13]

56.     While the Attorney General's opinion is not focused on the same stated service type, "event contracts" the underlying rationale applies equally. Offering a sports gambling service constitutes wagering on sports in violation of Penal Code section 337a, and Crypto.com's service is nothing more than that, wagering on sports.

---

[11] A copy of the letter is publicly available online at https://www.legalsportsreport.com/wp-content/uploads/2023/11/OU-23-1001-Sen.-Wilk-request-1.pdf  (last visited Feb. 12, 2026).

[12] Available online at https://oag.ca.gov/opinions/monthly-report (last visited Feb. 12, 2026).

[13] Opinion of the California Attorney General No. 23-1001 ("AG Opinion") at 1, available online at https://oag.ca.gov/system/files/attachments/press-docs/23-1001.pdf (last visited Feb. 12, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

57.     A true and correct copy of the Attorney General's Opinion is attached as **Exhibit A** to this Complaint.

## FACTS COMMON TO THE CLASSES

A.     **Crypto.com's Sports Betting & Gambling Operations**

        1.     **Overview of Crypto.com**

58.     Crypto.com operates what it claims to be a web-based "prediction" trade-based platform, which has a desktop and mobile application component (herein referred to as the "Gambling Websites"). In reality, Crypto.com actually offers illegal sports betting and gambling.

59.     In December 2024, Crypto.com began offering so-called "event contracts" that turn on the outcome of sporting events. This is just another name for gambling.

60.     Essentially, users bet on an outcome by deciding whether the event will occur or not and placing a bet by saying either "Yes" this will occur or "No" it will not occur. For example, a bet may be "Will the New England Patriots beat the Seattle Seahawks in the Super Bowl?," and users will either place a bet that the Patriots will win or a bet that they will not. Crypto.com calls these illegal sports gambling wagers "event contracts" in an attempt to hide the true nature of what they are: illegal sports gambling.

61.     In its currently effective Terms of Service, Crypto.com provides that "[a]ny dispute arising from these Terms, an Annex, or your use of the Services, whether brought in arbitration, small claims, or in a state or federal court, will be governed by and construed and enforced in accordance with the laws of the State of Florida . . . Any dispute between the parties that is not subject to arbitration or cannot be heard in small claims court will be resolved in the state or federal courts sitting in Miami-Dade County, Florida."[14]

---

[14] *See* Crypto.com Terms of Service, https://crypto.com/document/entity_us.pdf, Section 19.8 Governing Law & Venue.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

62.     Crypto.com's contracts are illegal bets that are incrementally priced, such that "After the event is resolved, you will receive a US$1 / US$10 / US$100 payment for each contract you own if you are correct. If you are incorrect, you will lose the amount you paid to open the position and nothing more, allowing you to know your potential gains and losses upfront:"[15]

Payout amount:

- $1 contract value → $1 payout
- $10 contract value → $10 payout
- $100 contract value → $100 payout

63.     After the sporting event ends, consumers receive the associated payouts depending on whether their bet was correct, at the value identified above. If they bet wrong, the bettor will lose the amount wagered.[16]

64.     Crypto.com offers its users the following markets to "trade": winner, spread, and totals. The "winner" market is a bet on who will win the game, the "spread" market is a bet on who will win the game after a point spread is applied, and the "totals" market is a bet on whether the combined score of both teams will be above or below a set total number of points:[17]

| Market | Trading | Payout |
|--------|---------|--------|
| Winner | Predict who will win the game. | If you correctly predict the winner, you get a payout. |
| Spread | Predict who will win the game after a point spread is applied. | If you correctly predict that the "favorite" wins by more points than the spread, you get a payout.<br><br>If you correctly predict that the "underdog" wins or loses by fewer points than the spread, you get a payout. |
| Totals | You predict whether the combined score of both teams will be above ("over") or below ("under") a set total number of points ("the line"). | If you correctly predict whether the total score is over or under the line, you get a payout. |

---

[15] *See* Sports Event Trading, Crypto.com, https://help.crypto.com/en/articles/10208780-sports-event-trading#h_4178661449 (last visited Feb. 12, 2026).

[16] *Id.*

[17] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

65.     Crypto.com makes money by raking in a fee on each transaction made on the platform.[18]

66.     Bettors deposit funds into their Crypto.com account and use those funds to place bets. Any return on a successful wager will remain in the bettor's Crypto.com account until they choose to withdraw.

67.     Crypto.com—acting as the proverbial "house"—matches bettors on opposite sides of the event contract (the "yes" and the "no") so that the combined wager from both bettors equals $1.

68.     If the price changes, bettors may "sell" their wager before the event takes place.

### 2.     Crypto.com's Platform Enables Gambling

69.     Crypto.com's platform employs manipulative, deceptive, and addictive tactics that are similar to other gambling platforms to encourage impulsive decisions, exploitative of any rewards, and all operate as unlawful and unlicensed gambling.

(continued on the next page)

---

[18] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

70.     Crypto.com's sports betting markets are structured as "Yes/No" contracts, all-or nothing payout, and is indistinguishable from money line sports wagering as shown in the example sports bets below.




(https://help.crypto.com/en/articles/10208780-sports-event-trading#h_41786614490)

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

71.     More importantly, as discussed above, Crypto.com employs classic sports-betting categories: money line winner, spreads, and totals. These terms do not exist independent of the sports betting industry, and relate to nothing except variations of ways to hedge or bet risk on mere games, pending the outcome of entirely independent events that relate to nothing paid or exchanged in return for monetary value. Indeed, Crypto.com "event contracts" for sports wagers constitute the most basic definition of gambling.

72.     And, as discussed above, Crypto.com's own explanation of its services specifically state that its services are essentially gambling, "[w]hen you buy a contract on Predict, *you're essentially placing a bet on your prediction about the occurrence, non-occurrence, or extent of the occurrence of a specific event . . .*"[19]

73.     Crypto.com's ability to match opposing positions and trade in-game collectively mirror sports wagers, or the exchange wager, where consumers bet against one another with dynamic pricing, and are the most typical and classic forms of sports wagering.

74.     Crypto.com's Gambling Websites use a layout that encourages high-risk transactions by emphasizing reward while obscuring risk.

### 3.     Crypto.com Claims Its Sports Betting Is Legal Nationwide, and Repeatedly Represents that Crypto.com Is Operating Legally.

75.     Crypto.com advertises its products nationally, through its website and mobile application, in addition to advertising on streaming online content, television, and social media advertisement.

76.     On its website, Crypto.com assures prospective and existing customers that sports betting is now legal in the United States in all 50 states.

77.     On Crypto.com's website, Crypto.com claims that "Sports Event Trading" is "a CFTC-regulated derivatives trading feature available in the Crypto.com App and on Crypto.com

---

[19] Charles Archer, *Event contract trading glossary for beginners*, Crypto.com, https://crypto.com/us/prediction/learn/event-contract-trading-glossary-for-beginners (last visited Feb. 13, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Web. Crypto.com also states "Sports Event Trading" is regulated in the US, subject to "regulatory oversight by the Commodity Futures Trading Commission (CFTC)."

78.     Crypto.com also represents that it is "legal to trade Sports event contracts on a CFTC-regulated exchange like Crypto.com Derivatives North America":[20]

## Where is this feature available?

Sports Event Trading is currently available in the United States only.

## FAQs

**Is Sports Event Trading legal?**

Sports Event Trading is regulated by the Commodity Futures Trading Commission (CFTC), and it is legal to trade Sports event contracts on a CFTC-regulated exchange like Crypto.com | Derivatives North America.

79.     Despite these public representations, Crypto.com does not disclose to its users its full history of CFTC regulation.

80.     Shortly after launching its illegal gambling service in December of 2024, the CFTC announced on January 14, 2025 that it was launching a full review of the two event contracts Crypto.com self-certified.[21]

81.     As part of this review, the CFTC "request[ed], pursuant to Commission regulation 40.11(c)(1), that Nadex suspend any listing and trading of the Contracts during the pendency of the Commission's 90-day review period, which will commence as of the date of this notification letter."[22]

---

[20] Crypto.com, *Sports Event Trading*, https://help.crypto.com/en/articles/10208780-sports-event-trading (last visited Feb. 13, 2026).

[21] Release Number 9033-25, *CFTC's Review of Nadex Sports Contract Submissions*, CFTC, https://www.cftc.gov/PressRoom/PressReleases/9033-25 (last visited Feb. 13, 2026).

[22] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

82.     Instead of complying with the CFTC's request, Crypto.com stated that it will "continue to support our customers and the trading of our sports title event contracts in all 50 states without interruption."[23]

83.     While Crypto.com is registered with the Commodity Futures Trading Commission, that does not render sports gambling through its website and mobile application legal in all fifty states. Crypto.com's promises to consumers that its sports gambling is legal are misleading.

84.     More importantly, Crypto.com fails to inform consumers that under CFTC-regulations, a registered entity shall not list for trading or accept for clearing on or through the registered entity" any "agreement, contract, transaction, or swap based upon an excluded commodity… that involves ... gaming, or an activity that is unlawful under any State or Federal law."  17 CFR § 40.11.

85.     For example, on a page titled "What is Sports Event Trading?", Crypto.com makes no reference to any relevant gambling regulations or the ongoing legal challenges that Crypto.com is facing, in Nevada or any other state in the United States.[24]

86.     Crypto.com misleadingly assures customers, by claiming "Is Sports Event Trading legal? Sports Event Trading is regulated by the Commodity Futures Trading Commission (CFTC), and it is legal to trade Sports event contracts on a CFTC-regulated exchange like Crypto.com | Derivatives North America."[25]

      **4.**     **Crypto.com's Design Encourages Repeated Gambling and Crypto.com Fails to Maintain Even Basic Features to Protect Its Users.**

87.     Crypto.com's user interface emphasizes a user's ability to win, showing a user's "chance to win" in larger and bold font while minimizing the cost of entry, displays real-time

---

[23] Sam McQuillan, *Crypto.Com Rejects CFTC Request to Halt Sports Trading*, Legal Sports Report, Jan. 19, 2025, https://www.legalsportsreport.com/221399/crypto-com-rejects-cftc-request-to-halt-sports-trading/ (last visited Feb. 12, 2026).

[24] Crypto.com, *Sports Event Trading*, https://help.crypto.com/en/articles/10208780-sports-event-trading (last visited Feb. 12, 2026).

[25] *Id*.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

tickers of price fluctuation, and looks similar to other market participants that offer services that are advertised as gambling services.

88.     For example, the Crypto.com Predict page for the NBA Eastern Conference Championship Winner in 2026 uses a streamlined binary betting structure showing the ease of a user's ability to bet on the winner, which is similar in layout and structure to a spread product from DraftKings, a popular sports gambling app.

**Crypto.com Predict Page**



**DraftKings Pick6 Page**



CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

89.     By using a binary pick structure, prominently highlighting a user's chance of winning, and structuring its product so it looks like gambling products users may already use, Crypto.com designed its user interface in a way that mimics online sports gambling websites.

90.     And these features work. Bloomberg News recently ran a story concerning the work of Jordan Bender, an equity research analyst at Citizens, who analyzed Kalshi Inc.'s gambling data (Kalshi offers similar gambling products to that of Crypto.com) based on a data set from Juice Labs, to determine how much users were losing as compared to traditional gambling accounts, such as on FanDuel and DraftKings.[26]

91.     The results were staggering. Bender's analysis showed that the bottom quarter of users lost 28 cents of every dollar they bet on prediction markets in the first three months of adoption, compared with about 11 cents per dollar on other online gambling sites. For the bottom ten percent of users, the losses in the first 90 days climbed to 44%.[27] And, further, the median prediction market wallet lost about 7% of the money wagered in the first 90 days of activity, compared with a 1% loss on other forms of gambling.[28]

92.     The following graphic shows the results of Bender's analysis as published in Bloomberg.[29]



**Casual Bettors Lose More on Prediction Markets, Report Finds**

Prediction markets show higher median losses than traditional platforms

■ Prediction Market Accounts   ■ Traditional Gambling Accounts

Source: Citizens, Juice Reel

Note: Traditional gambling accounts include regulated sportsbooks, bookies, offshore platforms, DFS and sweepstakes.

---

[26] Denitsa Tsekova, *Kalshi Claims 'Extortion,' then Recants in Feud Over User Loses*, Bloomberg, Feb. 4, 2026, https://www.bloomberg.com/news/articles/2026-02-04/kalshi-claims-extortion-then-recants-in-prediction-markets-gambling-feud.

[27] *Id*.

[28] *Id*.

[29] *Id*.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

93.     Crypto.com provides no safeguards to prevent widespread addiction, financial ruin or risk of loss, or provide education to users that supposed the "event contracts" constitute a form of highly addictive gambling. For example, going back to the foregoing screenshots of Crypto.com's Predict page and DraftKings' Pick6 page, DraftKings, unlike Crypto.com, has a "Responsible Gaming" button in the upper right corner of the screen, and such a similar page or link is conspicuously absent from Crypto.com's website.

94.     Crypto.com allows anyone to open an account and start placing bets, after entering basic personal information, so long as the individual is at least 18 years old and can provide a single verifying document.

95.     As Crypto.com discloses to users, its onboarding process requires only the following steps:

    a.   Go to the **Predict tab** in the Crypto.com App

    b.   Tap 'Start Now' on the top banner to set up your USD Account

    c.   If your USD Account is set up, tap 'Enable now' on the top banner

    d.   Accept and confirm the Terms & Conditions

    e.   You will receive an in-app notification and email when your account is approved

    f.   Congrats, you can start trading Prediction contracts![30]

96.     Additionally, Crypto.com's risk warnings are hard to locate behind continuously updating home-page content and are typically not shown at all on Predict pages like the one shown above for the NBA Eastern Conference Championship Winner of 2026.

97.     Crypto.com does not provide any resources or information to a bettor who is seeking responsible gambling messaging or help for financial loss or gambling addiction.

---

[30] *See* Prediction Trading – Onboarding, Crypto.com, https://help.crypto.com/en/articles/11373970-prediction-trading#h_1f3f13850a (last visited Feb. 12, 2026).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**B.**     **Despite Crypto.com's Services Being Illegal Under California and Florida Law, Crypto.com Continues to Offer and Advertise Its Services in These Jurisdictions.**

**1.**     **Crypto.com's Gambling Websites Violate Florida Law.**

98.     As discussed herein, Fla. Stat. Ann. § 849.26 voids all contracts for gambling transactions, unless the gambling transaction is expressly authorized by law.

99.     While Florida law allows for certain forms of gambling, such as by the gaming compact between the Seminole Tribe and the State of Florida, amusement games, pari-mutuel wagering, slot machine gaming, card rooms, and bingo games, Florida law does not expressly authorize the sports gambling Crypto.com offers to its users.

100.     As such, Crypto.com violates Florida law and any gambling contracts entered into with users of Crypto.com are void. This remains true whether a Crypto.com user is using Crypto.com within the state of Florida or in another state as Florida courts have consistently held that gambling obligations, even if valid in the state in which they were undertaken, are unenforceable in Florida as contrary to law and public policy.

101.     Further, bookmaking is illegal under Florida law, and Crypto.com's gambling services constitute bookmaking. Crypto.com freely admits that it is offering "event contracts" to its users that are based upon the results of sporting events, which are contests of skill and also are bets made on the result of a contingent event. As such, Crypto.com engages in bookmaking under Florida law, which is prohibited.

102.     In advertising its gambling services, Crypto.com also violates Florida's prohibitions on intentionally false and misleading advertising. By representing that its services are "legal," despite being prohibited under Florida law and the laws of each state where Plaintiffs reside, Crypto.com engages in intentionally false and misleading advertising.

**2.**     **Crypto.com's Gambling Websites Unlawfully Enables Sports Wagering in California.**

103.     Crypto.com makes its contract wagers freely accessible to the public in the United States through its website and its mobile apps, including in California.

104.     Crypto.com does not even attempt to reconcile California's ban on sports wagering.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

105.     Crypto.com does not even address the numerous risks associated with betting on Crypto.com, and no such disclaimers can be found on the public-facing wager regarding the fact that certain states prohibit sports gambling, including but not limited to California.

106.     Despite Crypto.com calling its gambling services "event contracts," consumers are placing wagers on the outcome of sporting events.

107.     Crypto.com's sports gambling constitutes unlawful gaming because Crypto.com "deals, plays, or carries on, opens, or causes to be opened" and "conducts, either as owner or employs" and acts by taking a "bank or percentage", and allowing individuals to play or bet, in violation of California Penal Code Section 330.

108.     Crypto.com's offering meets the definition of a "wager" under Section 337 because a user risks a sum of money (i.e. the price of the contract) on an uncertain occurrence in a sporting event (i.e. the position taken on the event contract) for the chance to win money if the event takes place (i.e. a prize). CAL. PENAL CODE § 337a(a)(4).

109.     Crypto.com's sporting event contracts concern a "contest" by which Crypto.com offers a bet or wager, related to "skill, speed or power of endurance of [a] person," or, "between persons…or mechanical apparatus. CAL. PENAL CODE § 337a(a)(6).

110.     Accordingly, Crypto.com's sport events contracts are wagers on uncertain outcomes, structured and operated in a manner that meets the legal definition of sports wagering under California law.

111.     For example, one of Crypto.com's offerings display a binary option of a winner of a contest, the perceived likelihood of either option winning, and a price on either option determined by that perceived likelihood.  Crypto.com pays out to the winner and nothing to the loser.

112.     Such bets are moneyline wagers, which is "a wager or agreement between two or more people that if an uncertain future event happens, the loser will pay money to the winner or give the winner something of value. A bet includes a wager made on the outcome of any actual or purported event, including but not limited to any kind of sporting contest."  CALCRIM No. 2993, Receiving or Holding Bets (CAL. PENAL CODE § 337a(a)(3)) (cleaned up).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

113.    Crypto.com's expanded its sports-contract offerings by launching new wager types are clearly "bets" and "wagers". CAL. PENAL CODE § 337a(a)(6).

114.    Moreover, Crypto.com's wagering structure, including the ability to sell wagers to other users and the matching of buyers on opposite sides of a contract constitutes "exchange wagering." Exchange wagering allows bettors to bet or trade against one another rather than a "house".

115.    In addition, Crypto.com offers the ability to wager on sporting events while those events are taking place.

116.    Put simply, the outcomes of the contests are contingent and unknown at the time the bets and wagers are collected and recorded (i.e., booked) by Crypto.com. And as a result, Crypto.com's contests violate California Penal Code Sections 319, 320, 321, 330, 330a, 337a, and 337j.[31]

## C.    Despite Knowing of Its Illegality, Crypto.com Continues to Represent Its Services Are Legal, Thus Acting with Malice, Oppression, and/or Fraud.

### 1.    Crypto.com Acted with Malice, Oppression, and Fraud.

117.    As detailed in this Complaint, Crypto.com has acted with malice, oppression, and fraud.

118.    Crypto.com acted with malice, because, among other reasons and as otherwise detailed in this Complaint, Crypto.com's conduct was despicable and was done with a willful and knowing disregard of the rights of the public, Plaintiffs, and the Classes (as defined below) because Crypto.com knew (or should have known) that its gambling operations were illegal in states that prohibit sports gambling and/or require registration to offer such products, but despite that induced Plaintiffs and the Classes to gamble and lose money through its Gambling Websites.

---

[31] Plaintiffs note that they are specifically authorized by Federal Rule of Civil Procedure Rule 8(d)(2) to make their allegations in the alternative, and accordingly, allege that the gambling contests offered in California by Crypto.com constitute games of "chance" for purposes of those Penal Code Sections that prohibit lotteries and/or other games of chance, and constitute games of skill, to the extent skill is found to be a necessary element of certain claims made under Penal Code Section 337a or otherwise.

119.     Crypto.com's conduct was oppressive because, among other reasons and as otherwise detailed in this Complaint, it was despicable and subjected Plaintiffs and the Classes to cruel and unjust hardship in knowing disregard of their rights, including by falsely inducing them to lose significant sums of money through the illegal gambling enterprise that Crypto.com held out as being legal throughout the country and in Plaintiffs' states of residence.

120.     Crypto.com's conduct was fraudulent, because, among other reasons and as otherwise detailed in this Complaint, Crypto.com intentionally misrepresented and concealed the true nature of its unlawful gambling enterprise from Plaintiffs and the Classes by affirmatively representing that the Gambling Website and associated contests were legal when Crypto.com knew (or should have known) that such contests were not.

### 2.     Crypto.com's Misrepresentations Have Tolled the Statute of Limitations.

121.     As detailed throughout this complaint, Crypto.com has consistently and explicitly represented to the public and its customers, including Plaintiffs and the Classes (as defined below), that its operation of the Gambling Websites are legal across the country.

122.     Among other things, Crypto.com has held itself out as an authority on gambling laws and regulations by making statements that its product is legal, and induced Plaintiffs and the Classes use of the Gambling Websites and to keep Plaintiffs and the Classes uses the Gambling Websites throughout the country.

123.     As a direct and proximate cause of Crypto.com's misrepresentations and statements, Plaintiffs and the Classes had no reason to believe that the operation of the Gambling Websites, or their participation in them, was unlawful. In fact, just the opposite. They trusted and relied upon the statements Crypto.com made to them.

124.     Plaintiffs and the Classes were unable to discover—and in fact did not discover—the true and unlawful nature of the Gambling Websites on their own, as, on information and belief, Crypto.com and others in the online sports gambling industry have inundates the internet and other

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

publicly available resources (e.g., news articles and legal blogs) with claims that sports gambling are legal in the states in which they are offered.

125.    When Plaintiffs learned the true unlawful nature of the Gambling Websites' operation in February of 2026, Plaintiffs filed this lawsuit.

## NAMED PLAINTIFFS' FACTS

**Plaintiff Kamana Keohohou**

126.    At all times relevant to this action, including at all times since creating an account with Crypto.com, Plaintiff Kamana Keohohou has resided in Palm Springs, California.

127.    On or about June of 2024, in response to advertisements he saw on social media while residing in Palm Springs, California, Plaintiff Keohohou created an account with Crypto.com. Crypto.com represented to Plaintiff that the services it offered in California were legal.

128.    Since that time, Crypto.com has continued to represent to Plaintiff including on the Gambling Websites—that its services are legal in California.

129.    In setting up and using his Crypto.com account, Plaintiff Keohohou expressly reasonably relied upon Crypto.com's representations that the services it provides in California are legal.

130.    If Crypto.com had honestly and accurately disclosed the unlawful nature of its gambling operations in California, Plaintiff Keohohou would not have created an account with Crypto.com in California and would not have placed bets while in California through Crypto.com's gambling website.

131.    Since he started using Crypto.com, Plaintiff has lost at least $1,200 to Crypto.com while in California. Within the past three months, Plaintiff has gambled and lost at least $25 on Crypto.com.

132.    If Crypto.com had not solicited bets and wagers from Plaintiff while representing that such activities were legal (when, unknown to Plaintiff at the time, they in fact were not legal),

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

he would not have made any of those bets or wagers and would not have paid any money to Crypto.com.

133.    In Plaintiff's experience, Crypto.com serves as the "house," matching bets between different players for "purchase and sale" (setting the proverbial "line"), taking bets and wagers from all users, documenting (i.e., "booking") those bets, using its records to determine "winners" and "losers," and eventually paying out the winners.

134.    While Plaintiff has now discontinued the use of Crypto.com while in California, he remains interested in online gambling in California, and if it becomes legal, he will continue to gamble online in California. Plaintiff may be tricked by Crypto.com in the future into engaging in unlawful gambling in California if Crypto.com continues to claim that its practices are legal.

135.    Plaintiff's sole reason for setting up an account with Crypto.com and purportedly consenting to Crypto.com's terms of service (which he did not review and was not aware he was purportedly agreeing to at the time of account creation or otherwise) was to gain access to the gambling services in California offered by Crypto.com that he now understands violate California law.

136.    Said differently, to the extent a contract was formed between Plaintiff Keohohou and Crypto.com, the sole purpose of the contract was to facilitate the unlawful gambling activities that are at issue in this Complaint.

137.    Accordingly, Plaintiff's supposed contract with Crypto was never formed due to a lack of consideration pursuant to California Civil Code Sections 1607 (requiring lawful consideration), 1608 (if any part of the consideration is in invalid the entire contract is void), and 1667 which makes contracts invalid where the contract is: "1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or 3. Otherwise contrary to good morals." Further, under Fla. Stat. Ann. § 849.26 all contracts (to the extent Plaintiff formed a contract with Defendants) where some or all of the consideration is for money or other thing won or lost, laid, staked, bettered, or wagered in any gambling transaction are void and of no effect, and as such, any contracts formed under Florida law between the Plaintiff and

Defendant(s) are void and have no effect as any consideration exchanged was for participating in an gambling transaction not authorized under Florida law.

**Plaintiff Nicholas Evans**

138.    At all times relevant to this action Plaintiff Nicholas Evans has lived in Benecia, California.

139.    When Crypto.com began offering sports betting, Plaintiff Evans reviewed the information Crypto.com made available about its sports betting service, and began making sports wagers.  At all times during his use of Crypto.com for sports betting, Plaintiff Evans understood that the service was legal in his home state of California based on Crypto.com's representations.

140.    If Crypto.com had honestly and accurately disclosed the unlawful nature of its gambling operations in California, Plaintiff Evans would not have used his Crypto.com account to engage in sports betting and would not have placed bets while in California through Crypto.com

141.    Since 2025, Plaintiff Evans has lost more than $800 to Crypto.com while in California.

142.    If Crypto.com had not solicited bets and wagers from Plaintiff while representing that its sports gambling was legal (when, unknown to Plaintiff, they were in fact not legal), he would not have made any of those bets or wagers and would not have used Crypto.com to engage in sports gambling.

143.    In Plaintiff Evans' experience, Crypto.com serves as the "house," matching bets between different players for "purchase and sale" (setting the proverbial "line"), taking bets and wagers from all users, documenting (i.e., "booking") those bets, using its records to determine "winners" and "losers," and eventually paying out the winners.

144.    While in California, Plaintiff Evans gambled with Crypto.com as recently as January 2026, and in the last three months has lost at least $40 to Crypto.com when sports betting.

145.    While Plaintiff Evans has discontinued his use of Crypto.com for sports gambling while in California, he remains interested in online gambling in California, and if it becomes legal, he would resume online gambling in California. Plaintiff may be tricked by Crypto.com in the

future into engaging in unlawful gambling in California if Crypto.com continues its California operations and continues to represent their legality.

146.    Plaintiff Evans bargained for entry into a *legal* gambling contest, but what he received from Crypto.com was entry into an illegal gambling contest. Plaintiff Evans did not receive the benefit of his bargain, as the illegal entry had substantially less (in fact zero) value than entry into a legal gambling service. Moreover, if Crypto.com had accurately disclosed the unlawful nature of the gambling service, Plaintiff would not have used Crypto.com's gambling service.

147.    Said differently, to the extent a contract was formed between Plaintiff and Crypto.com related to his sports gambling, Plaintiff's sole reason for entering any contract applicable to his sports gambling was to engage in engage in the gambling activities that are at issue in this Complaint.

148.    Accordingly, Plaintiff Evans' supposed contract with Crypto was never formed due to a lack of consideration pursuant to California Civil Code Sections 1607 (requiring lawful consideration), 1608 (if any part of the consideration is in invalid the entire contract is void), and 1667 which makes contracts invalid where the contract is: "1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or 3. Otherwise contrary to good morals." Further, under Fla. Stat. Ann. § 849.26 all contracts (to the extent Plaintiff formed a contract with Defendants) where some or all of the consideration is for money or other thing won or lost, laid, staked, bettered, or wagered in any gambling transaction are void and of no effect, and as such, any contracts formed under Florida law between the Plaintiff and Defendant(s) are void and have no effect as any consideration exchanged was for participating in an gambling transaction not authorized under Florida law.

## V.    CLASS ALLEGATIONS

149.    This action is brought and may properly proceed as a class action pursuant to Federal Rule of Civil Procedure Rule 23, including, without limitation, Sections (b)(1), (b)(2), and (b)(3) of Rule 23.

150.     Plaintiffs seek certification of the following classes (the collectively, the "Classes"):

> The Nationwide Class: All persons in the United States who lost money by making one or more bets on Crypto.com.

> The California Class: All residents of California who lost money by making one or more bets on Crypto.com.

151.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action, members of their staffs (including judicial clerks), and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest, and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel, and non-attorney employees of their firms; and (6) the legal representatives, successors, and assigns of any such excluded persons.

152.     Defendants' practices have resulted in actual injury and harm to the Classes' members in the amount of deposits made with Crypto.com and/or losses incurred on a Gambling Website for bets or wagers placed while in California.

153.     Plaintiffs explicitly reserve their right to amend, add to, modify, and/or otherwise change the proposed class definition as discovery in this action progresses.

154.     **Numerosity.** Plaintiffs are informed and believe that there are hundreds of thousands or potentially millions of members of the Classes. The Classes are so large that the joinder of all of its members is impracticable. The exact number of members of the Classes can be determined from information in the possession and control of Defendants.

155.     **Commonality.** Defendants have acted or refused to act on grounds that apply generally to the Classes. Absent certification of the Classes, the relief sought herein creates the possibility of inconsistent judgments and/or obligations imposed on Defendants and/or Plaintiffs and the Classes. Numerous common issues of fact and law exist, including, without limitation:

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

a. Whether Defendants Terms of Service are void under Florida Statute Section 849.26.

b. Whether Defendants engage in bookmaking under Fla. Stat. Ann. § 849.251.

c. Whether Defendants violated the Florida Deceptive Trade Practices Act.

d. Whether Defendants violate California's laws criminalizing gambling;

e. Whether Defendants' representations that their practices are legal are misleading;

f. Whether Defendants conduct violates public policy;

g. Whether Defendants engaged in false or misleading advertising;

h. Whether Defendants' conduct constitutes violations of the laws asserted herein;

i. Whether the sports betting contracts are void;

j. Whether Plaintiffs and the other Classes members have been injured and the proper measure of their losses as a result of injuries; and

k. Whether Plaintiffs and the other Classes members are entitled to injunctive, declaratory, or other equitable relief.

156. **Predominance.** These common issues predominate over individualized inquiries in this action because Defendants' liability can be established as to all members of the Classes as discussed herein.

157. **Typicality.** Plaintiffs' claims against Defendants and experience with Defendants are typical, if not identical, to the claims and experiences of members of the Classes because, among other reasons, Plaintiffs' claims arise from Defendants' practices that are applicable to the Classes.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

158.    **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs' claims are representative of the claims of the other members of the Classes, as Plaintiffs and each member of the Classes lost money to Defendants. Plaintiffs also do not have any interests antagonistic to those of the Classes, and Defendants have no defenses unique to the Plaintiffs that will be atypical of any defenses to the Classes' claims. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Classes.

159.    **Superiority.** There are substantial benefits to proceeding as a class action that render proceeding as a class action superior to any alternatives, including that it will provide a realistic means for members of the Classes to receive equitable monetary relief; the equitable monetary relief suffered by members of the Classes may be relatively small; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many members of the Classes may be unaware that they have equitable recourse for the conduct alleged herein; and because issues common to members of the Classes can be effectively managed in a single proceeding. Plaintiffs and their counsel know of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

160.    Plaintiffs reserves the right to revise each of the foregoing allegations based on facts learned through additional investigation and in discovery.

## VI.    CAUSES OF ACTION

**A.    First Cause of Action: Violation of Fla. Stat. Ann. § 501.204 on behalf of Plaintiffs Keohohou, Evans, and the Nationwide Class Against Defendants.**

161.    Plaintiffs, on behalf of themselves and all others similarly situated, repeats and re-alleges paragraphs 1 through 160 as if fully set forth herein.

162.     As discussed herein, Defendants' Terms of Service provide "the law of the State of Florida" shall apply to "all substantive issues" of any dispute between users and Crypto.com.[32] As such, Plaintiffs brings their claim under the Florida Deceptive and Unfair Trade Practices Act.[33]

163.     Under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. Fla. Stat. Ann. § 501.204(1).

164.     In interpreting what practices are considered unfair or deceptive acts or practice, due consideration and great weight is given to the interpretations of the FTC and the federal courts relating to Section 5 of the Federal Trade Commission Act as in effect on July 1, 2017. Fla. Stat. Ann. § 501.204(2).

165.     To state a FDUTPA violation, a consumer must show that there was a deceptive act or unfair practice, causation, and actual damages. *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097-98 (11th Cir. 2021). In determining whether an act is deceptive under FDUTPA, the plaintiff must allege that the practice was likely to deceive a consumer acting reasonably in the same circumstances. *Id.* at 1098 (cleaned up). And in turn, an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Id.*

166.     In offering its gambling services, Defendants commit both deceptive and unfair practices.

167.     As discussed herein, Defendants offer their gambling services in all fifty states, including Florida under the guise that it is "legal to trade Sports event contracts on a CFTC-regulated exchange like Crypto.com Derivatives North America." Defendant Nadex is the entity

---

[32] Crypto.com's terms of service provides "the law of the State of Florida" shall apply to "all substantive issues" of any dispute between users and Crypto.com. Crypto.Com App And Web U.S. Terms & Conditions, January 19, 2026 section 16.10 ("Governing Law in Arbitration Proceeding"), available https://crypto.com/document/entity_us.pdf (last visited Feb. 12, 2026).

[33] Under Federal Rule of Civil Produce 8(d), Plaintiffs are permitted to plead their claims in the alternative. Plaintiffs contend that under Florida law Plaintiffs' contracts (to the extent a contract was formed) with Defendants are void as they are for illegal gambling transactions. As such, Plaintiffs bring state law claims under the laws of the states of their residence in the alternative.

that offers the gambling services themselves and Defendant Foris DAX, Inc. works in conjunction with Nadex to offer and maintain the web-based and mobile applications users use to engage in illegal sports wagering.

168.     Despite this representation, Defendants' gambling services are illegal under Florida law (whose laws Defendants purport should apply to its gambling services in its terms of use) as they are agreements where the consideration exchanged between Defendants and its users is for money lost, laid, staked, betted, or wagered in violation of Fla. Stat. Ann. § 849.26, and as such, representing that it is legal to engage in Defendants' gambling services is a deceptive practice.

169.     Plaintiffs, who are representative of a consumer acting reasonably in the same circumstances, were deceived as they understood that Defendants' gambling services were legal within the state of Florida (and throughout the United States) when they were not.

170.     Plaintiffs were damaged because, as alleged above, Plaintiffs believed that they were engaged in fully legal gambling, when in fact, Plaintiffs were unknowingly engaging in illegal gambling.

171.     Further, Defendants also engaged in unfair practices for the same reasons. Florida has created a specific statutory regime that legalizes gambling in very narrow instances, none of which apply to Defendants. As discussed here, offering to consumers an illegal gambling service that Defendants are not authorized to offer in the state of Florida offends Florida's public policy against gambling unless specifically authorized by law and one that is substantially injurious to consumers as consumers are led to believe that they are engaging in illegal behavior all while engaging in illegal gambling and losing hundreds, if not thousands, doing so.

**B.     Second Cause of Action: Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.,* ("UCL") on behalf of Plaintiffs Keohohou, Evans and the California Class Against Defendants.**

172.     Plaintiffs, on behalf of themselves and all others similarly situated, repeats and re-alleges paragraphs 1 through 160 as if fully set forth herein.

173.     Defendants, Plaintiffs, and the California Class are "persons" within the meaning of the UCL.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

174.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice," each of which is separately actionable.

175.   Defendants' practices of operating Gambling Websites within California are "unlawful" within the meaning of the UCL because, among other things, the operation of a Gambling Websites violates California Penal Code Sections 319, 320, 321, 330, 330a, 337a, and 337j because, among other reasons, in the course of business and in the course of trade and commerce, Defendants have:

a.   Operated illegal lotteries and/or games of chance in violation of Penal Code Sections 319, 320, 321, 330a, and 337j by operating Gambling Websites and contests in California.[34]

b.   Operated banking and/or percentage gambling games in violation of Penal Code Section 330 by operating Gambling Websites and contests in California.

c.   Engaged in pool selling in violation of Penal Code Section 337(a)(1) by operating Gambling Websites and contests in California.

d.   Engaged in bookmaking in violation of Penal Code Section 337(a)(1) by operating Gambling Websites and contests in California.

e.   Violated Penal Code Section 337(a)(3) by "receiv[ing], hold[ing], or forward[ing] . . . money . . . staked, pledged, bet or wagered . . upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of person or animal, or between persons, animals, or mechanical apparatus, or upon the result, or purported result, of any lot, chance,

---

[34] Plaintiffs note that they are specifically authorized by Federal Rule of Civil Procedure Rule 8(d)(2) to make their allegations in the alternative, and accordingly, allege that the gambling contests offered in California by Defendants constitute games of "chance' for purposes of those Penal Code Sections that prohibit lotteries and/or other games of chance, and constitute games of skill, to the extent skill is found to be a necessary element of certain claims made under Penal Code Section 337a or otherwise.

casualty, unknown or contingent event whatsoever" by operating Gambling Websites and contests in California.

    f.    Violated Penal Code Section 337(a)(4) by "record[ing], or register[ing] any bet or bets, wager or wagers, upon the result . . . of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of person or animal, or between persons, animals, or mechanical apparatus, or upon the result, or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever" by operating a Gambling Websites and contests in California.

    g.    Violated Penal Code Section 337(a)(6) by "[o]ffer[ing] or accept[ing] any bet or bets, or wager or wagers, upon the result . . . of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of person or animal, or between persons, animals, or mechanical apparatus" by operating Gambling Websites and contests in California.

176.    Defendants' operation of the Gambling Websites and contests within California is also unlawful within the meaning of the UCL because Crypto.com has violated the CLRA, as alleged in this Complaint, and violated Penal Code section 496(a), as alleged in this Complaint.

177.    Defendants' operation of Gambling Websites and contests within California is also unlawful within the meaning of the UCL because Defendants have violated the California Business and Professions Code, because "no person in this state has a right to operate a gambling enterprise except as may be expressly permitted by the laws of this state." Cal. Bus. & Prof. Code § 19801(d).

178.    The acts and practices of Defendants as alleged herein also constitute "unfair" business acts and practices under the UCL because Defendants' conduct is unconscionable, immoral, deceptive, unfair, illegal, unethical, oppressive, and/or unscrupulous. Further, the gravity of Defendants' conduct outweighs any conceivable benefit of such conduct.

179.     Defendants have, in the course of business and in the course of trade or commerce, undertaken and engaged in unfair business acts and practices by tricking consumers into believing operation of Gambling Websites and contests are lawful in California, when in fact, they are not, causing Plaintiffs and the California Class to be tricked out tens if not hundreds of millions of dollars.

180.     Plaintiffs and the California Class have suffered injury in fact—in the form of all amounts paid to Defendants and/or the total of net losses on a Gambling Website run by Defendnats for bets placed within California—as a result of Defendants' unlawful and unfair business acts and practices and are at substantial risk of continuing to lose money and be injured by those acts and practices if the practices are not enjoined.

181.     Plaintiffs seek all available equitable remedies under the UCL. Specifically, Plaintiffs and the California Class seek an order providing equitable restitution and/or equitable disgorgement in the form of all amounts paid to Defendants by Plaintiffs and the California Class and/or the total of net losses on the Gambling Websites by Plaintiffs and the California Class for bets placed within California.

182.     Plaintiffs further seek an equitable order enjoining the unlawful practices in California.

183.     Plaintiffs and the California Class further seek their attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5 because Plaintiffs and the California Class seek to enforce "an important right affecting the public interest" in bringing this equitable claim.

**C.     Third Cause of Action: Violation of California's Consumer Legal Remedies Act, California Civil Code §§ 1750 *et seq.,* on Behalf of Plaintiffs Keohohou, Evans and the California Class Against Defendants.**

184.     Plaintiffs, on behalf of themselves and all others similarly situated, repeats and re-alleges paragraphs 1 through 160 as if fully set forth herein.

185.    At all relevant times, Plaintiffs and the California Class members were "consumers" within the meaning of the CLRA, as they were individuals seeking or acquiring, by purchase or lease, goods or services for personal, family, or household purposes.

186.    Defendants' actions and conduct constituted transactions for the sale or lease of goods or services to consumers under the terms of the CLRA, namely the selling of the unlawful gambling services that are at issue in this action through the Gambling Websites.

187.    Defendants violated the CLRA by, among other things:

a.      "Misrepresenting the source, sponsorship, approval, or certification of goods or services" (a)(2);

b.      "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

c.      "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have" (a)(5);

d.      "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (a)(7);

e.      "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14);

f.      "Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction" (a)(17); and

g.      "Inserting an unconscionable provision in the contract" (a)(19).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

    h.      Defendants' actions and misrepresentations were material, and Defendants' violations of the CLRA were a substantial factor in causing Plaintiffs and the California Class to lose money.

    i.      As a direct and proximate consequence of these actions, Plaintiffs and the California Class suffered injury.

188.    Defendants' conduct was malicious, fraudulent, and wanton in that it intentionally and knowingly provided misleading information to Plaintiffs and the California Class for Defendants' own benefit to the detriment of Plaintiffs and the California Class.

189.    The CLRA provides robust enforcement tools for consumers, including:

    a.      Prohibiting the waiver of any substantive rights provided for under the CLRA. *Id.* § 1750

    b.      Requiring that the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760.

    c.      Establishing a substantive right to litigate in the forum where the transaction occurred and/or where the consumer lives. *Id.* § 1780(d).

    d.      Establishing a substantive right to pursue class claims. *Id.* § 1781; *see also id.* § 1752.

    e.      Authorizing injunctive relief. *Id.* § 1780(a)(2)

    f.      Authorizing actual damages. *Id.* § 1780(a)(1).

    g.      Authorizing restitution of unlawfully taken sums. *Id.* § 1780(a)(3).

    h.      Authorizing punitive damages. *Id.* § 1780(a)(4).

    i.      Authorizing statutory damages of $1,000 per violation. *Id.* § 1780(a)(1).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

      j.      Authorizing statutory damages of $5,000 per injured individual, where the unlawful conduct was directed against the elderly or the disabled. *Id.* § 1780(b)(1).

      k.      Requiring that the Court "shall award court costs and attorney's fees to a prevailing plaintiff in litigation." *Id.* § 1780(e).

190.     Plaintiffs seek all available remedies under the CLRA, except that, at this time, Plaintiffs do not seek any monetary damages for their CLRA causes of action.[35]

**D.**    **Fourth Cause of Action: Violation of Penal Code section 496(c) on Behalf of Plaintiffs Keohohou, Evans, and the California Class Against Defendants.**

191.     Plaintiffs, on behalf of themselves and all others similarly situated, repeats and re-alleges paragraphs 1 through 160 as if fully set forth herein.

192.     As alleged above, Defendants' advertisements and website representations induced Plaintiffs to wager significant amounts of money via the Gambling Website on the false pretense that Defendants' sports betting platform was legal in California. Defendants' purpose in making these false pretenses was to illegally take money from Plaintiffs and the California Class.

193.     Pursuant to California Penal Code section 496(a) receiving property "that has been obtained in any manner constituting theft" is a criminal offense punishable by imprisonment. Pursuant to California law, procuring funds by false pretenses constitutes a violation of Section 496(a). Pursuant to Section 496(c), any person that violates Section 496(a) is liable for three times the actual damages as well as attorney's fees.

194.     Defendants' conduct alleged above constitutes a violation of Penal Code section 496(a) entitling Plaintiffs and the California Class to the relief provided by Section 496(c) including treble damages and reasonable attorney's fees.

---

[35] Pursuant to Section 1782(d) of the CLRA, Plaintiffs expressly reserves their right to amend the CLRA cause of action to add claims for monetary relief, including, without limitation, for actual, punitive, and statutory damages, at least 30 days after providing Defendants the notice contemplated by Section 1782(a).

**E.**   **Sixth Cause of Action: Gambling Loss Recovery Statutes on Behalf of Plaintiffs Keohohou, Evans, and the California Class.**

195.   Plaintiffs, on behalf of themselves and all others similarly situated, repeats and re-alleges paragraphs 1 through 160 as if fully set forth herein.

196.   Like many U.S. states, in the early days of statehood, California looked to English common law to model its state law on.

197.   On April 13, 1850, California passed an "Act adopting the Common Law," which read: "The Common Law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of the State of California, shall be the rule of decision in all Courts of this State."

198.   Since 1850, California continues to maintain the Act, and it is currently codified at Cal. Civ. Code § 22.2. Cal. Civ. Code § 22.2 currently provides: "The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all courts of this State." Courts have determined that when California imported the English common law that California imported not only the "whole body of judge-made" decision law of the English courts, but "also the written statutes enacted by Parliament." *Tak Chun Gaming Promotion Co. Ltd. v. Long*, 314 Cal. Rptr. 3d 890, 895 (2023), as modified on denial of reh'g (Nov. 17, 2023) (cleaned up).[36]

199.   One of the statutes of Parliament that was effective in 1850 (and therefore incorporated into California law) was the Gaming Act of 1710, commonly referred to as the "Statute of Anne." Section II of the Gaming Act of 1710 reads as follows (edited for clarity):

> And be it further enacted by the Authority aforesaid, That from and after the said first Day of May one thousand seven hundred and eleven, any Person or Persons whatsoever, who shall at any Time or Sitting, by playing at Cards, Dice, Tables, or other Game or Games whatsoever, or by betting on the Sides or Hands of such as do play at any of the Games aforesaid, lose to any one or more Person or

---

[36] The California Supreme Court cases addressing gambling debts as "off limits" did not consider the applicability of Civil Code Section 22.2, and the more accurate, recent, and comprehensive statement of the law is provided in *Tak Chun Gaming Promotion Co. Ltd. v. Long*, 314 Cal. Rptr. 3d 890, 895 (2023), as modified on denial of reh'g (Nov. 17, 2023).

Persons of playing or betting in the whole, the Sum or Value of ten Pounds, and shall pay or deliver the same or any Part thereof, the Person or Persons, so losing and paying or delivering the same, shall be at Liberty within three Months then next, to sue for and recover the Money or Goods so lost, and paid or delivered or any Part thereof, from the respective Winner and Winners thereof, with Costs of Suit, by Action of Debt founded on this Act, to be prosecuted in any of her Majesty's Courts of Record, in which Actions or Suits no Effoin, Protection, Wager or Law, Privilege of Parliament, or more than one Imparlance shall be allowed; in which Action it shall be sufficient for the Plaintiff to allege, that the Defendant or Defendants are indebted to the Plaintiff, or received for the Plaintiff's Use, the Money so lost and paid, or converted the Goods won of the Plaintiff to the Defendant's Use, whereby the Plaintiff's Action accrued to him, according to the Form of this Statute, without setting forth the Special Matter; and in café the Person or Persons who shall lose such Money or other Thing aforesaid, shall not within the Time aforesaid, really and bona fide, and without Covin or Collusion, sue, and with Effect prosecute for the Money or other Thing, so by him or them lost, and paid or delivered as aforesaid, it shall and may be lawful to and for any Person or Persons, by such Action or Suit aforesaid, to sue for and recover the same, and treble the Value thereof, with Costs of Suit, against such Winner or Winners as aforesaid; the one Moiety thereof to the Use of the Person or Persons that will sue for the same, and the other Moiety to the use of the Poor of the Prish where the Offense shall be committed.

200.     Within the meaning of the Statute of Anne, and by extension Cal. Civ. Code § 22.2, Defendants are the "winner" as they received all or part of the money lost by Plaintiffs through Defendants' gambling services.

201.     Within the meaning of the Statute of Anne, and by extension Cal. Civ. Code § 22.2, Plaintiffs are a "Persons" as they lost money to Defendants using their gambling services. Defendants received all or part of the money Plaintiffs lost to Defendants. Plaintiffs have not colluded with any other individuals in brining this action.

202.     Plaintiffs and the California Class Members all lost more than "ten Pounds" during the "playing or betting in the whole, the Sum of Value" within "three Months" as provided within the meaning of Cal. Civ. Code § 22.2, and by extension, the Statute of Anne.

**F.      Seventh Cause of Action: Declaratory Judgment, 28 U.S.C. § 2201, on Behalf of Plaintiffs Keohohou, Evans, and the Nationwide Class Against Defendants**

203.      Plaintiffs, on behalf of themselves and all others similarly situated, repeats and re-alleges paragraphs 1 through 160 as if fully set forth herein.

204.      The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether further relief is or could be sought."

205.      An actual, present, and justiciable controversy has arisen between Plaintiffs and the Class (on one hand) and Defendants (on the other hand) regarding whether: (1) Defendants' operation of the Gambling Websites violates the California laws enumerated within the Complaint, (2) whether Defendants' contracts with Plaintiffs and the Classes (to the extent any were formed) are void or voidable, including, without limitation, pursuant to Fla. Stat. Ann. § 849.26 (if Florida law applies to Plaintiffs' gambling transactions with Defendants), or California law, (3) whether Plaintiffs and the Classes must pursue their claims in small claims court, and (4) the applicable statute of limitations for claims raised by Plaintiffs and the Class.

206.      Plaintiffs seek a declaration in his favor on behalf of himself and the Classes that (1) Defendants' operation of the Gambling Websites violates the laws of California and Florida as set forth herein, (2) Defendants' contracts with Plaintiffs and the Classes are void or voidable, including, without limitation, pursuant to Fla. Stat. Ann. § 849.26 (if Florida law applies to Plaintiffs' gambling transactions with Defendants) or California law, (3) Plaintiffs' claims do not need to be heard in small claims court, and (4) the applicable statute of limitations for claims raised by Plaintiffs and the Classes have been tolled since the inception of Defendants' commencement of sports gambling operations.

## **JURY TRIAL DEMAND**

207.      Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

208.    Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter an Order:

**A.**    Certifying the proposed Class pursuant to Rule 23, appointing Plaintiffs as Class Representative, and appointing Plaintiffs' counsel as Class Counsel;

**B.**    Awarding damages, including nominal, punitive, consequential, and all other damages that the Court may deem appropriate;

**C.**    Awarding equitable relief, including injunctive relief and monetary relief such as equitable restitution and/or equitable disgorgement;

**D.**    Providing for any and all other relief the Court deems appropriate;

**E.**    Awarding Plaintiffs their reasonable costs and expenses of suit, including all attorneys' fees available under the relevant laws;

**F.**    Awarding pre- and post-judgement interest on any equitable monetary recovery to extent allowed at equity; and

**G.**    Providing such further equitable relief as this Court may deem just and proper.

Respectfully submitted,

Dated: February 13, 2025

**VARNELL & WARWICK, P.A.**

/s/ Jeffrey L. Newsome, II
Jeffrey L. Newsome, II, FBN: 1018667
Janet R. Varnell, FBN: 0071072
Brian W. Warwick, FBN: 0605573
Pamela G. Levinson, FBN: 538345
Christopher J. Brochu, FBN: 1013897
Vanessa A. Buchko, FBN: 549754
400 N. Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
jnewsome@vandwlaw.com
jvarnell@vandwlaw.com
bwarwick@vandwlaw.com
plevinson@vandwlaw.com
cbrochu@vandwlaw.com
vbuchko@vandwlaw.com
ckoerner@vandwlaw.com

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Wesley M. Griffith, *pro hac vice* to be filed
(California Bar No. 286390)
**ALMEIDA LAW GROUP LLC**
111 W. Ocean Blvd, Suite 426
Long Beach, CA 90802
Telephone: 310-896-5813
E-mail: wes@almeidalawgroup.com

David A. McGee, *pro hac vice* to be filed
(Maryland Bar No. 191218000034)
**ALMEIDA LAW GROUP LLC**
3133 Connecticut Ave Nw.
Washington, DC 20008
Telephone: 202-913-5681
E-mail: dmcgee@almeidalawgroup.com

James Bilsborrow, *pro hac vice* to be filed
(New York Bar No. 4702064)
**WEITZ & LUXENBERG PC**
700 Broadway
New York, NY 10003
Telephone: 212-344-5461
E-mail: jbilsborrow@weitzlux.com

Michael Piggins, *pro hac vice* to be filed
(Michigan Bar No. P81240)
**WEITZ & LUXENBERG PC**
3011 W. Grand Blvd., Fl. 24
Detroit, MI 48202
Telephone: 231-366-3108
E-mail: mpiggins@weitzlux.com

Margot P. Cutter, *pro hac vice* to be filed
(California Bar No. 306789)
**CUTTER LAW, P.C.**
401 Watt Ave.
Sacramento, CA 95864
(916) 290-9400
Email: mcutter@cutterlaw.com
Email: cstevens@cutterlaw.com

F. Peter Silva II, *pro hac vice* to be filed
(California Bar No. SBN 348070)
**TYCKO & ZAVAREEI LLP**
333 H Street, Suite 5000
Chula Vista, CA 91911
Telephone: 510-588-5299
E-mail: psilva@tzlegal.com

Katherine M. Aizpuru, *pro hac vice* to be filed
(New York Bar No. 5305990)
Robert M. Devling, *pro hac vice* to be filed
(D.C. Bar No. 1781150)

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, District of Columbia 20006
Telephone: 202-973-0900
E-mail: kaizpuru@tzlegal.com
E-mail: rdevling@tzlegal.com

***Counsel for Plaintiffs and the Proposed Classes***

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL